UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LED WAFER SOLUTIONS LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO. LTD., et al., <br><br> Defendants. | Case No. 22-cv-04809-AMO <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS & PLAINTIFF'S MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 285, 287, 301 |

This is a patent infringement case. The partial motions to dismiss from Defendants/Counterclaim Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), Dkt. No. 285, and Defendant-Intervenor Seoul Semiconductor Co., Ltd. ("Seoul Semiconductor"), Dkt. No. 287, were heard before this Court on January 9, 2026. The voluntary motion to dismiss from Plaintiff/Counterclaim Defendant LED Wafer Solutions, LLC ("LED Wafer"), Dkt. No. 301, was heard before this Court on June 11, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court **GRANTS** Samsung's and Seoul Semiconductor's partial motions to dismiss and **GRANTS** LED Wafer's voluntary dismissal for the following reasons.

## I.    BACKGROUND

Plaintiff LED Wafer is a Delaware company based in Waco, TX, that owns the asserted patents. First Am. Compl. (Dkt. No. 172, "FAC") ¶¶ 4-5. Defendant Samsung Electronics Co., Ltd. is a Korean corporation, and Defendant Samsung Electronics America, Inc. is a New York corporation. FAC ¶¶ 6-7. Intervenor-Defendant Seoul Semiconductor is a Korean company. FAC ¶ 10. It asserts itself as a "true defendant to LED Wafer's claims as it manufactures LED

United States District Court
Northern District of California

components accused of infringement." Dkt. No. 23 at 6.

**A.      Factual Background**

The "asserted patents" in LED Wafer's First Amended Complaint are United States Patent Nos. 8,941,137 (the " '137 patent"), 8,952,405 (the " '405 patent"), and 9,786,822 (the " '822 patent"). *See* FAC ¶ 19. Most relevant here, "[t]he '137 Patent claims a "light emitting diode (LED) device and packaging . . . manufactured using a vertical configuration including a plurality of layers." FAC ¶ 23.

For each patent, LED Wafer makes the same allegations:

> Representatives of Viagan [the prior patent assignee] had discussions with representatives of Seoul Semiconductor for the purpose of exploring a potential business partnership between Viagan and Seoul Semiconductor and exploring Seoul Semiconductor's potential use or adoption of Viagan's LED technology. At this meeting, and in other related discussions, Viagan presented its proprietary LED technology to Seoul Semiconductor, including technical personnel such as Eunee Chen, an employee of Seoul Semiconductor. During these discussions, Viagan informed Seoul Semiconductor that Viagan had pending patent applications covering Viagan's LED technology and specifically identified the application from which the '137 Patent issued, i.e. Application No. 13/413,407 filed on March 6, 2012, as one such application covering the proprietary LED technology that Viagan was discussing with Samsung.
>
> On information and belief, due in part to these past discussions, Seoul Semiconductor has had actual knowledge of the '137 Patent since its issuance, or at the latest, since its receipt or review of Plaintiff's Original Complaint.

FAC ¶¶ 43-44; *see also, e.g.*, ¶¶ 39-42 (describing similar events with Samsung). LED Wafer alleges that it notified Seoul Semiconductor of a "pending patent application" from which the '405 Patent ultimately issued, but never that it notified Seoul Semiconductor of the '405 Patent itself. FAC ¶¶ 86-87. LED Wafer alleges that Seoul Semiconductor should have known of the '822 Patent because Viagan allegedly identified a patent application to which the '822 Patent "claims priority via a continuation." FAC ¶¶ 127-28.

**B.      Procedural History**

LED Wafer initiated this action against Samsung on March 25, 2021, in the Western District of Texas, alleging direct, willful, and indirect infringement. Dkt. No. 1 ¶ 15. Samsung

moved to dismiss the willful and indirect infringement claims. Dkt. No. 14. The Western District of Texas court granted the motion and permitted LED Wafer "leave to amend its pleadings to reassert these claims after the start of discovery if it is able to substantiate those allegations." *See* Dkt. No. 18. Samsung then answered the original complaint on August 16, 2021. Dkt. No. 19. Seoul Semiconductor filed a motion to intervene as a defendant, Dkt. No. 23, which the Western District of Texas court granted on November 22, 2021, Dkt. No. 39.

On November 26, 2021, Samsung moved to transfer the case to this District, which the Western District of Texas court granted on August 22, 2022. *See* Dkt. No. 93. During the pendency of that motion, discovery opened on March 4, 2022. Dkt. No. 57.

Here in the Northern District of California, Samsung filed an amended answer that included counterclaims seeking declaratory judgment of noninfringement and invalidity of all asserted patents. Dkt. No. 170. On December 16, 2022, LED Wafer filed its FAC, accusing Samsung smartphones and tablets that include a "flash LED." FAC ¶¶ 25, 66, 110. On January 3, 2023, LED Wafer filed its answer to Samsung's counterclaims. Dkt. No. 175.

Samsung filed a partial motion to dismiss the FAC on January 14, 2023. Dkt. No. 178. Shortly thereafter, Samsung moved to stay the case due to co-pending ex parte reexaminations ("EPR"). Dkt. No. 185. On April 3, 2023, Judge Vince Chhabria granted Samsung's motion to stay and terminated the motions to dismiss subject to re-filing after the stay was lifted. Dkt. No. 198. Those EPRs concluded in August 2024, and the stay was lifted. Dkt. Nos. 215, 216.

LED Wafer then sought leave to amend its complaint a second time during the case management conference held on October 10, 2024. Dkt. No. 238. The Court ordered LED Wafer to file its motion, under an agreed briefing schedule, and any renewed motion to dismiss was scheduled to follow an order on Plaintiff's motion for leave. Dkt. No. 237. Consistent with the Court's order, the parties submitted full briefing on Plaintiff's motion for leave to amend (Dkt. No. 245 through Dkt. No. 250), and that motion was set for a hearing until Plaintiff's former counsel moved to withdraw from the case. *See* Dkt. No. 272. The Court administratively terminated the motion for leave to amend, gave LED Wafer additional time to secure new counsel, and ordered Plaintiff to file its motion for leave by September 15, 2025. *Id.*

United States District Court
Northern District of California

On September 15, 2025, instead of seeking leave to amend its complaint, LED Wafer gave notice that it intended to proceed with the FAC as the operative pleading. Dkt. No. 276 at 1. LED Wafer also gave notice that it would "no longer assert" the '822 and '405 patents so that it could file a separate suit on those patents in the Eastern District of Texas. *See* Dkt. No. 276 at 1; *see also* Compl., *LED Wafer Sols., LLC v. Samsung Elecs. Co.*, No. 2:25-cv-00948 (E.D. Tex., filed Sept. 15, 2025). On October 17, 2026, Samsung and Seoul Semiconductor renewed their partial motions to dismiss claims from the FAC. Dkt. Nos. 285 & 287. Following complete briefing of those motions and on the eve of the hearing, LED Wafer filed a motion to voluntarily dismiss the action. Dkt. No. 301.

## II. DISCUSSION

The Court proceeds chronologically and considers the partial motions to dismiss from Samsung and Seoul Semiconductor before turning to LED Wafer's motion to dismiss the remainder of the case.

### A. Samsung's and Seoul Semiconductor's Partial Motions to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, it need not accept legally conclusory statements unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts

United States District Court
Northern District of California

do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

In this case, both Defendants move to dismiss LED Wafer's claims for (1) willful infringement and (2) indirect (induced and contributory) infringement on the basis that the FAC lacks factual allegations establishing an essential element of all these forms of patent infringement: Defendants' *knowledge* of the patents-in-suit. The Court first takes up the sufficiency of allegations related to pre-suit knowledge before turning to the portions of LED Wafer's claims arising from post-suit knowledge.

### 1. Pre-suit Knowledge

#### a. Knowledge of Patent Application

Each of the theories of infringement challenged by Defendants here, including willful, contributory, and induced, all require plausible allegations of defendants' knowledge of the patents. To plead willful infringement, a plaintiff must allege facts demonstrating that the accused infringer had: (1) "knowledge of the asserted patent," (2) "knowledge of infringement," and (3) the "specific intent to infringe at the time of the challenged conduct." *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1095 (N.D. Cal. 2022) (citing *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021), *BASF Plant Sci., LP v.*

United States District Court
Northern District of California

*Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247 (Fed. Cir. 2022)). "To willfully infringe a patent, the patent must exist and one must have knowledge of it." *State Indus. v. A.O. Smith Corp.*, 751 F. 2d 1226, 1236 (Fed. Cir. 1985). As the Federal Circuit ruled in the *A.O. Smith* case, "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable." *Id.* at 1236; *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed" is a "prerequisite."). Similarly, to adequately plead contributory infringement, "the patent owner must properly allege: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.' " *People.ai, Inc. v. SetSail Techs., Inc.*, No. 20-cv-09148, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021) (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)). Finally, "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). As with the other forms of infringement described above, a plaintiff alleging the knowledge requirement must demonstrate the accused inducer had actual knowledge, i.e., both (1) "knew of the patent" and (2) "knew as well that 'the induced acts constitute patent infringement.' " *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639 (2015).

Here, LED Wafer alleges Defendants' purported knowledge of then-pending patent applications, not any knowledge of then-existing patents. Starting with Samsung, at the time of the "potential business partnership" meetings that took place between Viagan and Samsung in 2013, which gave Samsung notice of the underlying technology, none of the asserted patents existed. FAC ¶¶ 39, 43, 82, 86. Rather, none of the asserted patents issued until years later, in 2015 and 2017. FAC, Ex. A ('137 patent issued Jan. 27, 2015); Ex. B ('405 patent issued Feb. 10, 2015); Ex. C ('822 patent issued Oct. 10, 2017). As for the other Defendant, LED Wafer similarly alleges that it notified Seoul Semiconductor of two patent applications that were filed years before the asserted patents actually issued. FAC ¶¶ 44-45 ('137 patent); ¶¶ 86-87 ('405 patent). These contentions are insufficient to establish Defendants' knowledge of the patents themselves. As

6

noted above, allegations of mere notice of patent applications are insufficient to establish notice of patent infringement for purposes of a willful infringement claim – a patent application itself is not notice of a patent since none yet exists, and a mere application cannot serve as the knowledge basis for willful or indirect infringement. *A.O. Smith*, 751 F. 2d at 1236; *see also MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103-WHA, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021) ("Knowledge of a patent cannot be plausibly alleged when the triggering event occurred prior to the issuance of the patent."). Therefore, LED Wafer's allegations that Defendants were aware of the applications preceding the asserted patents are insufficient to establish either knowledge of the patents or knowledge of the infringement, and each of LED Wafer's willful and indirect infringement claims must fail as to all the asserted patents.

### b.    Willful Blindness

Seeking to overcome its deficiencies in alleging Defendants' prior knowledge of the asserted patents, LED Wafer suggests that "pleading knowledge of a patent application and 'more' have been found to be sufficient" to allege pre-suit knowledge. Dkt. No. 290 at 15-16 (citing *Corephotonics, Ltd. v. Apple, Inc.*, No. 17-cv-06457-LHK, 2018 WL 4772340, at *8 (N.D. Cal. Oct. 1, 2018)). The Supreme Court explained, "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Glob.-Tech Appliances, Inc.*, 563 U.S. at 769. In *Corephotonics*, the court found allegations that a defendant's knowledge of a patent application in addition to willful ignorance of the resulting patent gave rise to a plausible inference of willful blindness that supported the knowledge element of infringement. *Corephotonics*, 2018 WL 4772340, at *8. The plaintiff in that case collaborated closely with Apple for several years, providing detailed schematics of its patented designs and technology, working closely with Apple's internal engineers and employees at Apple's facilities, and providing Apple with physical samples, simulations, demonstrations, and detailed design files. *Id.* at *5-6. The court found that Apple had actual notice of issued patents, having cited one of Corephotonics's issued patents in its own patent applications and having expressly told Corephotonics not to send additional patents – conduct that plausibly showed deliberate avoidance. *Id.* at *8-9. This raised a plausible inference

United States District Court
Northern District of California

that Apple "believed that there was a high probability that it was infringing the Asserted Patents, and that Apple took deliberate actions to avoid learning of that fact" sufficient to establish knowledge in support of a claim of willful infringement. *Id.* at *26.

Such allegations are absent here. In contrast to *Corephotonics*, there is no pattern of years of close collaboration between LED Wafer and either Defendant. Neither Defendant sought to avoid receiving information regarding issued patents. Indeed, there are no allegations of existing, noticed patents to which either Defendant could be willfully blind at the time of the meetings with Viagan. FAC ¶¶ 43-44. LED Wafer's argument that the knowledge element of its infringement contentions can be satisfied by willful blindness must be rejected on these allegations. Consequently, the Court will grant the motion to dismiss the willful and indirect claims of infringement as to all the asserted patents.

### 2. Post-Suit Knowledge

LED Wafer also attempts to plead willful infringement for damages occurring since the inception of this suit based upon the filing of the original complaint. *See, e.g.*, FAC ¶ 41 ("Samsung had actual knowledge of the '137 Patent upon its receipt of Plaintiff's Original Complaint."); ¶¶ 44, 87, 128 (". . . Seoul Semiconductor has had actual knowledge of the [asserted] Patent . . . at the latest, since its receipt or review of Plaintiff's Original Complaint"). This argument focuses on willful infringement to the exclusion of contributory or induced infringement.

"District courts across the country are divided over whether a defendant must have the knowledge necessary to sustain claims of indirect and willful infringement before the filing of the lawsuit." *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021); *see also id.* at 249 n.1 (collecting district court cases both permitting and disallowing an original complaint to serve as a basis for willful or induced infringement claims). "Neither the Federal Circuit nor the Supreme Court has addressed the issue." *Id.* at 250 (going on to opine that it "seems . . . neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for indirect infringement and enhanced damages."). As Judge William Alsup distilled the two sides of the argument, "if there was no

viable willfulness claim prior to suit then . . . the service of a patent infringement complaint cannot bootstrap its way to willfulness"; but on the other hand, "a well-pled, detailed complaint laying out a clear case of infringement could supply the knowledge (post-complaint) required for willfulness once a defendant has had a reasonable period of time to evaluate the complaint's contentions." *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 645 (N.D. Cal. 2022).

But in this case, even if the Court took the course of recognizing willfulness based on post-suit conduct alone, LED Wafer still falls short because it fails to adequately allege deliberate or intentional infringement in this intervening period. Subjective intent to infringe remains an element of any claim for enhanced damages under a theory of willful infringement, and "[t]he complaint must also contain allegations that 'the accused infringer had a specific intent to infringe at the time of the challenged conduct.' " *Dali Wireless*, 638 F. Supp. 3d at 1095-96 (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1379 (Fed. Cir. 2020)). Moreover, those factual allegations must suffice "to render a claim of willfulness plausible, and not merely possible." *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) (citing *Twombly*, 550 U.S. at 570).

Here, LED Wafer fails to tip its allegations of post-suit willfulness from possible to plausible. LED Wafer alleges nothing more than "garden-variety" conduct after initiation of the lawsuit, far short of the specific intent to infringe required for willfulness. The post-suit willfulness claims rest on the fact that "Samsung had actual knowledge of the [asserted patents] upon its receipt of Plaintiff's Original Complaint" and "has not taken any steps to design around or otherwise avoid infringing" the asserted patents, such as by ceasing sales of the Galaxy S22 Smartphone. *See* FAC ¶¶ 41, 44, 84, 125. Those assertions, without more, do not cross the threshold into plausible allegations of willfulness because requiring every patent defendant "to cease sales at the time of the complaint . . . or face willfulness allegations" for continuing its ordinary business conduct after being sued would prove unreasonable. *See Dali Wireless*, 638 F. Supp. 3d at 1099. Courts regularly reject plaintiffs' attempts to transform a defendant's continued sales following initiation of patent case into post-suit willfulness. *See, e.g.*, *id.* at 1099; *Slot Speaker*, 2017 WL 4354999, at *2 ("Defendant's ongoing manufacturing and sales, on their own,

United States District Court
Northern District of California

are equally consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit."). LED Wafer accordingly fails to advance intentional infringement based on Defendants' post-lawsuit business activity. Therefore, even if LED Wafer established Defendants' knowledge of infringement following initiation of this lawsuit by the original complaint, the theory of willful infringement in the post-suit period falls short as insufficiently pleaded.

### 3. Dismissal With Prejudice

As noted above, prior to the transfer of this action to this Court, the Western District of Texas court previously dismissed similar allegations as to willfulness and indirect infringement in the original complaint without prejudice and granted leave to amend, resulting in the FAC now at issue. Dkt. No. 18. LED Wafer elected to forgo seeking leave to amend its complaint further. Dkt. No. 276 at 1-2 ("LED Wafer states that it does not intend to move to amend its operative complaint in this Action and will proceed with the First Amended Complaint (Dkt. 172) as the operative complaint."). Accordingly, based on the factually deficient allegations relating to knowledge as well as LED Wafer's waiver of further amendment of the claims, the Court finds that the claims of willful, induced, and contributory infringement asserted here must all face dismissal with prejudice and without further leave to amend.

### B. LED Wafer's Motion to Dismiss Under Rule 41

LED Wafer moves to dismiss the case, and it generally requests dismissal of its claims (as well as Samsung's counterclaims) without prejudice. *See* Dkt. No. 301. In this case, Defendants have already filed answers, and no party disputes that Federal Rule of Civil Procedure 41(a)(2) guides the resolution of LED Wafer's motion for voluntary dismissal. Rule 41(a)(2) states that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The decision to grant a voluntary dismissal under Rule 41(a)(2) falls within the district court's discretion and "will not be disturbed unless the court has abused its discretion." *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996). Generally, "[a] district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972,

975 (9th Cir. 2001) (citations omitted). "[L]egal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal. *Id.* at 976. Rather, legal prejudice is "prejudice to some legal interest, some legal claim, some legal argument. Uncertainty because a dispute remains unresolved is not legal prejudice." *Westlands Water Dist.*, 100 F.3d at 97.

Defendants jointly oppose LED Wafer's motion for voluntary dismissal under Rule 41(a)(2), broadly arguing that they will suffer prejudice if this action is dismissed, particularly in relation to Samsung's counterclaims seeking declarations of non-infringement. *See* Dkt. No. 312.

### 1.    Legal Prejudice as to Patent Claims

The primary focus of a plaintiff's request for dismissal under Rule 41(a)(2) centers on whether the defendant would suffer legal prejudice as a result of the dismissal. *Smith*, 263 F.3d at 975; *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989). Importantly, mere threat of future litigation, without more, does not constitute legal prejudice. *Westlands Water Dist.*, 100 F.3d at 97. Relatedly, "the expense incurred in defending against a lawsuit does not amount to legal prejudice." *Id.*

Defendants advance that they would suffer three forms of prejudice if the Court granted dismissal in this case: (1) that it would force the parties to relitigate Defendants' earlier, successful effort to transfer the case to this District from the Western District of Texas; (2) that dismissal would expose Defendants to "reimagined willful and indirect infringement claims" (Dkt. No. 312 at 30); and (3) Defendants would have to start over litigation in Eastern District of Texas despite all the discovery and effort put into this case in this forum. Dkt. No. 312 at 29-32. All of these arguments fall short of demonstrating legal prejudice of the sort necessary to reject LED Wafer's voluntary dismissal.

At the outset, it must be reiterated that the Eastern District of Texas case is legally and formally a separate case from this case as the two actions involve separate allegations of patent infringement that, while premised on some of the same operative patents, implicate distinct claims of the patents based on different infringing products. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). With this distinction in mind, the Court turns to

Defendants' arguments regarding the prejudice they may suffer if this case is dismissed.

First, dismissal of the action here by no means would compel Defendants to "relitigate" transfer. Because the two cases stand apart, Defendants' actions in the newly-filed Eastern District of Texas case would not "redo" anything that has already been accomplished here. But further, and perhaps more clearly, the parties have already thoroughly and completely briefed Defendants' pending motion to change venue in the Eastern District of Texas case, meaning that denying dismissal of the case here would not prevent any prejudice already suffered in litigating the issue.

Second, granting LED Wafer's request for voluntary dismissal here would not reopen the door for it to assert willful and indirect infringement claims. The Court above dismissed those theories of infringement with prejudice based on LED Wafer's failure to demonstrate Defendants' knowledge of then-existing patents.

Third and finally, Defendants' lamentations that they are prejudiced at continuing to litigate in Eastern District of Texas because they have expended so many resources litigating in this forum simply fails to establish prejudice. This case was stayed in this forum for years while the parties litigated the patent claims before the Patent Trial and Appeal Board, and this case remains at the pleading stage. But further, "plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum[.]" *Smith*, 263 F.3d at 976. And "the expense incurred in defending against a lawsuit does not amount to legal prejudice." *Westlands Water Dist.*, 100 F.3d at 97. Defendants fail to show legal prejudice that would result from the dismissal of the remaining patent cause of action with prejudice.

Here, given the posture of this case, Defendants have not offered nor can the Court identify any specific legal prejudice Defendants would suffer from voluntary dismissal. *See Stevedoring*, 889 F.2d at 921. Further, granting voluntary dismissal conserves judicial resources and is in the interest of judicial economy. The Court will accordingly grant LED Wafer's request to voluntarily dismiss the causes of action for infringement of the '405 patent and '822 patent as well as LED Wafer's request to voluntarily dismiss the cause of action for infringement of the '137 patent with prejudice to re-filing against Samsung on currently released products.

### 2.    Discretionary Dismissal of Declaratory Counterclaims

For Samsung's counterclaims seeking declarations of non-infringement as to the asserted patents, the Court may decline to exercise discretion because "the Declaratory Judgment Act provides that a court 'may declare the rights and other legal relations of any interested party,' not that it must do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting 28 U.S.C. § 2201(a)). The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In exercising this discretion, courts consider "whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008). These objectives include "clarifying and settling the legal relations in issue," and affording relief from "uncertainty, insecurity, and controversy[.]" *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004) (quoting Edwin Borchard, Declaratory Judgments 299 (2d ed. 1941)).

In this case, maintaining jurisdiction over the declaratory judgment counterclaims generally would not promote the objectives of the Declaratory Judgment Act. Defendants' insistence that the issues in this case remain live for adjudication remain linked to their insistence that the case should remain in this forum, *see* Dkt. No. 312 at 19-20, but Defendants do not identify any uncertainty, insecurity, or controversy lingering for this Court to resolve. In this case, Samsung's counterclaims regarding the '405 patent and '822 patent serve no useful purpose in light of the changes to the patents following reexamination. *See Fresenius*, 721 F.3d at 1340. And Samsung's counterclaim regarding the '137 patent serves no useful purpose because LED Wafer seeks to dismiss the sole non-moot cause of action with prejudice as to the period preceding this action. Samsung's counterclaims for non-infringement need not serve as a procedural safeguard to protect Defendants from a future suit alleging infringement of the asserted patents where LED Wafer would be precluded from refiling on the same allegations of infringement dismissed by this order. Accordingly, the Court declines to exercise jurisdiction over Samsung's counterclaims seeking a declaration of non-infringement, and it dismisses the counterclaims as

well. *BuzzBallz, LLC v. MPL Brands NV, Inc.*, No. 24-cv-04004-EKL, 2025 WL 2052301, at *5 (N.D. Cal. July 22, 2025).

**III.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Samsung's and Seoul Semiconductor's respective partial motions to dismiss.  The Court **DISMISSES** LED Wafer's claims of willful infringement as to the '137 patent, the '405 patent, and '822 patent against Samsung and Seoul Semiconductor, with prejudice and without leave to amend.  The Court **DISMISSES** LED Wafer's claims of induced infringement and contributory infringement as to the '137 patent, the '405 patent, and '822 patent against Samsung and Seoul Semiconductor, with prejudice and without leave to amend.

The Court **GRANTS** LED Wafer's voluntary motion to dismiss.  Given the lack of legal prejudice to Defendants, the Court **DISMISSES** LED Wafer's remaining claims on the '405 patent and '822 patent without prejudice in accordance with LED Wafer's voluntary dismissal. Also in accordance with LED Wafer's voluntary dismissal, all claims on the '137 patent are dismissed with prejudice to re-filing against Samsung on currently released products.  The Court declines to exercise jurisdiction over Samsung's counterclaims for declaratory relief arising from the same patents and **DISMISSES** the counterclaims as well.

The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

Dated: June 16, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

14